IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELIQUE T. WALLACE<br>                    *Plaintiff,*<br><br>v.<br><br>PHILADELPHIA COLLEGE OF<br>OSTEOPATHIC MEDICINE<br><br><br>                    *Defendant.* | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CIVIL ACTION<br><br>No. |

## COMPLAINT

Plaintiff Angelique T. Wallace through her attorneys, van der Veen, Hartshorn & Levin, asserts the following Complaint against Defendant Philadelphia College of Osteopathic Medicine for violations of Title VII, 42 U.S.C. § 2000(e), *et seq*., and the Pennsylvania Human Relations Act, 42 P.S. §951, *et seq*.

## PARTIES

1.      Plaintiff Angelique Wallace (hereinafter, "Plaintiff") is and was at all relevant times an adult residing within Philadelphia County, Pennsylvania.  At all material times hereto, Plaintiff worked for Pennsylvania College of Osteopathic Medicine as a Communications Coordinator within Marketing and Communications.

2.      Defendant Pennsylvania College of Osteopathic Medicine (hereinafter, "PCOM") is a business operating several healthcare centers throughout Pennsylvania.

3.      At all times relevant to this complaint, Defendant was an "employer" and Plaintiff was an "employee" within the meaning of applicable law.

1

## JURISDICTION AND VENUE

4. This action is brought pursuant to Title VII of the Civil Rights Act of 1965, as codified, 42 U.S.C. § 2000e to 2000e-17, and 42 U.S.C. § 1983. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

5. Jurisdiction lies over state law claims based on the principals of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. §1391(d) given that the Defendant is headquartered within the applicable jurisdictional territory and/or all events giving rise to this Complaint occurred within the confines of Philadelphia, PA.

## FACTS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff began working with PCOM through a temporary staffing agency. Plaintiff worked in the Clinical Education Department as an Evaluation Coordinator.

8. Throughout the course of her temporary employment, Plaintiff's work ethic was noticed by the Director of Clinical Education, and when a full-time position became available, it was recommended that she apply.

9. Plaintiff interviewed and was offered an Office Manager position in November 2023. However, Plaintiff later learned that there would be a slight change to her position and she would instead be working as a Communications Coordinator. Plaintiff started in this position as of December 1, 2023.

10. Plaintiff was intended to replace the departing Communications Coordinator, Susan Neborak, and their employment overlapped for the month of December 2023.

2

11. Neborak would treat Plaintiff in a condescending manner, consistently belittled her and would often raise her voice at Plaintiff during training sessions. This conduct was witnessed by at least one other coworker.

12. Plaintiff began her role in full as of January 2024, and acclimated quickly to her new responsibilities, and often received praise. However, Plaintiff found her work nitpicked and unnecessarily critiqued by several co-workers who were part of the marketing team. The members of the marketing team also discouraged others from assisting Plaintiff.

13. Plaintiff's probationary period was initially set to end on February 1, 2024, but PCOM elected to extend this period for an additional one-month because of the hiccups with Plaintiff's onboarding and to make sure that she fully understood her position.

14. Plaintiff was documented as completing her probationary period as of February 29, 2024.

15. On March 21, 2024, Plaintiff sent an email to PCOM's Chief Marketing and Communications Officer, Wendy Romano, expressing concern about her treatment by her co-workers, and the double standards she was experiencing. Romano responded asking to set up a meeting.

16. On March 25, 2024, Plaintiff met with Romano and Terri Blair. Romano acted defensive during the meeting and said that the situation was escalating. She subsequently scheduled another meeting for later that afternoon with Romano, Blair, and PCOM's Chief of Human Resources, Christina Mazzella.

17. Plaintiff explicitly noted during this meeting that she felt as if she was being treated differently because of the color of her skin, and that she was Black.

18.     Romano then asked why Plaintiff felt that way, and Plaintiff responded by offering several situations in which she was treated differently than her white co-workers.  Plaintiff also brought up in this meeting that she was set up to fail in her position, because the training materials she was provided were outdated.

19.     Romano became visibly irate in response to Plaintiff's accusation about race, and accused Plaintiff of having a chip on her shoulder, being too sensitive, and acting entitled.  Romano further indicated that she did not feel she could work with Plaintiff, and that Plaintiff would not get over how she was treated by Neborak.

20.     Plaintiff took the next two days as paid time off (PTO) due to the stress of the situation, and Romano approved the PTO.

21.     Upon information and belief, Defendant utilized this time to try to create a record of Plaintiff failing to fulfill her obligations by sending her emails requiring immediate or prompt action while they were aware she was out of the office and not checking her email.

22.     Plaintiff returned to work on March 28, 2024 and was almost immediately told that she needed to report to human resources.  Mazzella handed Plaintiff a piece of paper and asked her to sign, indicating that she had been terminated "without cause".

23.     Three other Black female employees quit following Plaintiff's termination, and cited their own mistreatment as well as the mistreatment of Plaintiff in their communications to PCOM surrounding their termination.

24.     Plaintiff filed a concurrent Charge of Discrimination with the Pennsylvania Human Relations Commission and the Equal Employment Commission on August 8, 2024.

25.     On April 10, 2026, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

4

**COUNT ONE**
**TITLE VII, 42 U.S.C. § 2000e-2(a)**
**HOSTILE WORK ENVIRONMENT—RACE**

26.    Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

27.    At all relevant times hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

28.    Defendant, at all relevant times, was an employer as defined by Title VII.

29.    Plaintiff is a member of a protected class due to her race, African American.

30.    Through Plaintiff's employment with Defendant, Plaintiff was subjected to unwelcome harassment, disparate treatment, and discriminatory conduct as a result of her race.

31.    This conduct was severe and/or pervasive, and altered the terms, conditions, and privileges of Plaintiff's employment.

32.    The discriminatory conduct would have affected a reasonable person in Plaintiff's position.

33.    Defendant knew or should have known about the race-based discrimination because Plaintiff made management level complaints, and it was pervasive within the department.

34.    Despite having actual and/or constructive knowledge of the discriminatory conduct, Defendant failed to take prompt and effective measures to remediate the situation.

35.    As a direct and proximate result of Defendant's actions, Plaintiff suffered embarrassment, humiliation, anxiety, emotional distress, and other economic damages.

**COUNT TWO**
**TITLE VII, 42 U.S.C. § 2000e-2(a)**
**RETALIATION**

5

36.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

37.     Plaintiff engaged in a protected activity by complaining to management-level employees of Defendant that she felt she was being treated differently based upon her race.

38.     Instead of addressing these concerns and/or providing Plaintiff with any support, Defendant retaliated against Plaintiff by treating her in a condescending and degrading manner, then ultimately terminating her employment.

39.     As a direct and proximate cause of Defendant's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

**COUNT THREE**
**PENNSYLVANIA HUMAN RIGHTS ACT**
**HOSTILE WORK ENVIRONMENT—RACE**

40.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

41.     Plaintiff is a member of a protected class due to her race, African American.

42.     Through Plaintiff's employment with Defendant, Plaintiff was subjected to unwelcome harassment, disparate treatment, and discriminatory conduct as a result of her race.

43.     This conduct was severe and/or pervasive, and altered the terms, conditions, and privileges of Plaintiff's employment.

44.     The discriminatory conduct would have affected a reasonable person in Plaintiff's position.

45.     Defendant knew or should have known about the race-based discrimination because Plaintiff made management level complaints, and it was pervasive within the department.

46.     Despite having actual and/or constructive knowledge of the discriminatory conduct, Defendant failed to take prompt and effective measures to remediate the situation.

47.     As a direct and proximate result of Defendant's actions, Plaintiff suffered embarrassment, humiliation, anxiety, emotional distress, and other economic damages.

## COUNT FOUR
## PENNSYLVANIA HUMAN RIGHTS ACT
## RETALIATION

48.     Plaintiff incorporates the preceding paragraphs of this Complaint as if same were set forth herein at length.

49.     Plaintiff engaged in a protected activity by complaining to management-level employees of Defendant that she felt she was being treated differently based upon her race.

50.     Instead of addressing these concerns and/or providing Plaintiff with any support, Defendant retaliated against Plaintiff by treating her in a condescending and degrading manner, then ultimately terminating her employment.

51.     As a direct and proximate cause of Defendant's conduct, Plaintiff suffered significant damages, including but not limited to lost wages and benefits, pain and suffering, mental anguish, humiliation, and reputational damage.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

1.      Enter judgment in favor of Plaintiff and against Defendant for violation of her rights under Title VII and the PHRA;

2.      Declare that the actions of Defendant constituted unlawful discrimination;

7

3.      Award Plaintiff compensatory damages, including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate her for her losses, and damages for emotional distress;

4.      Award Plaintiff punitive damages for Defendant's violations of Title VII not only for the egregious nature of the wrong Defendant did to Plaintiff, but additionally to deter Defendant from such imperious conduct in the future in such amount as the Court deems proper;

5.      Award Plaintiff her costs, attorneys' fees, and non-taxable expenses in this action; and

6.      Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully Submitted,

Date: June 25, 2026           By:        */s/ Kaitlin C. McCaffrey*
                                          Kaitlin C. McCaffrey
                                          I.D. No. 329960
                                          Attorney for Plaintiff
                                          1219 Spruce Street
                                          Philadelphia, PA 19107
                                          P: (215) 546-1000
                                          F: (215) 546-8529
                                          E: kmccaffrey@mtvlaw.com